**In re ATTORNEY GENERAL OF TEXAS, Relator.**

No. 14–04–01073–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 5, 2005.

John B. Worley, Rhonda Amkraut Pressley, Austin, for relator.

Joseph Leon Nealy, Houston, for respondent.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

PER CURIAM.

The Office of the Attorney General seeks mandamus relief from a trial court order reinstating a paternity action. Because the trial court abused its discretion, we conditionally grant the petition for writ of mandamus.

### BACKGROUND

In November 2002, the attorney general filed a petition to establish a parent-child relationship. The purported father, Thomas Gasaway, the real party in interest here, did not file an answer. In December 2002, the trial court signed an order for parentage testing, which also set a trial date for March 20, 2003. The parentage test showed Gasaway could not be excluded as the biological father of the child and that the probability of paternity was 99.99%. On March 20, 2003, a Title IV–D [1] master held a hearing and because Gasaway did not appear, signed a default order establishing a parent-child relationship. The order found Gasaway was the father of the child and ordered him to pay $345 per month in child support. The order

---

1. *See* 42 U.S.C.A. § 651 authorizing appropriations for the purpose of enforcing child support obligations owed by noncustodial parents.

also rendered a retroactive support judgment of $16,520 and ordered Gasaway to pay $100 per month to satisfy the judgment. The trial court did not sign this order.

In 2004, Gasaway filed a bill of review seeking to set aside the March 20, 2003, paternity order. In the order denying Gasaway's bill of review, the trial court made the following ruling:

> The Court FINDS that the order challenged in this bill of review action, which was signed by the Title IV–D Associate Judge on March 20, 2003, was not signed by the referring court and is not in the form of a recommendation. For this reason, the Court declares that order to be void.

The trial court then reinstated the paternity suit on the trial docket. The trial court denied the attorney general's motion for new trial and set the paternity action for trial November 29, 2004. On November 9, 2004, the attorney general filed a petition for writ of mandamus in this court seeking relief from the trial court's reinstatement order. This court stayed all trial proceedings until a final decision on the attorney general's petition for writ of mandamus.

### STANDARD OF REVIEW

Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or the violation of a legal duty when there is no adequate remedy at law. *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex.1999). In determining whether there has been a clear abuse of discretion justifying mandamus relief, the reviewing court must consider whether the trial court's ruling was one compelled by the facts and circumstances or was arbitrary, unreasonable, or reached without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

Here, an appeal of the trial court's order of reinstatement would be interlocutory. Interlocutory orders may be appealed only if permitted by statute. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex. 1985). Because no interlocutory appeal can be taken from the trial court's order, relator has no adequate remedy by appeal. *See Jack B. Anglin v. Tipps*, 842 S.W.2d 266, 271 (Tex.1992).

### MASTER'S ORDER

The Family Code authorizes a trial court judge to refer certain family law matters to either associate judges or to child support masters. *See* TEX. FAM.CODE ANN. § 201.001–.208 (Vernon 2002). The trial judge can appoint an associate judge to hear any matter over which the trial court has jurisdiction under Title 1 or 4 of the Family Code. TEX. FAM.CODE ANN. § 201.005 (Vernon 2002). The statutes concerning associate judges and masters are divided into Subchapter A, which concerns associate judges, and Subchapter B, which concerns Title IV–D masters. *See* TEX. FAM.CODE ANN. ch. 201 (Vernon 2002). At the time the master in this case rendered the order, under Subchapter A, an associate judge was not given the power to render a final order on the merits, but could recommend an order to be rendered by the referring judge. TEX. FAM.CODE ANN. § 201.007(a) (amended September 1, 2003 to allow an associate judge limited powers to render final judgments). Although the associate judge's recommendation was in full force and effect pending appeal, if no appeal was filed, the associate judge's recommendation did not become a final order of the referring court unless the referring court signed an order conforming to the associate judge's report. TEX. FAM.CODE ANN. § 201.013 (amended September 1, 2003).

Subchapter B, which address the powers and duties of Title IV–D masters, provides that "A master may render and sign any order that is not a final order on the merits of the case." TEX. FAM.CODE ANN. § 201.104(c) (amended September 1, 2003 to reflect that Subchapter A applies except to the extent of any conflict and if a conflict exists, Subchapter B prevails). Section 201.1041(a) provides, however, if an appeal of the master's order is not filed, the master's order, other than a recommendation of enforcement by contempt or a recommendation of immediate incarceration, shall become the order of the referring court. TEX. FAM.CODE ANN. § 201.1041(a) (Vernon 2002).

■ The trial judge in this case referred the suit to establish a parent-child relationship to a Title IV–D master and the master signed an agreed order that did not contain language of recommendation. The trial court found that absent language of recommendation the order is void. Invalidating the order because it does not contain the words "recommended" or "proposed" elevates form over substance. *In re G.S.G.*, 145 S.W.3d 351, 353 (Tex.App.-Houston [14th Dist.] 2004, no pet.). The Family Code does not require the child-support master's proposed order to contain language of recommendation. The code states that the "report may contain the associate judge's findings, conclusions, or recommendations, including a proposed order." TEX. FAM.CODE ANN. § 201.011(a). The text of the code sections provides the master's proposed order is not a final order when the master signs it, but becomes final only if neither party appeals. *In re G.S.G.*, 145 S.W.3d at 354.

■ Further, a review of the legislative history indicates the legislature intended the master's order to become final if no appeal was filed. In construing the above code sections, we may consider: (1) the object sought to be attained, (2) circumstances under which the statute was enacted, (3) legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) consequences of particular construction, (6) administrative construction of the statute, and (7) title, caption, preamble, and any emergency provisions. TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998).

■ With regard to the object sought to be attained, the purpose behind enacting the master system was to increase the effectiveness of the child support division of the attorney general's office. The intent of the bill was to create an ombudsman where child support obligations could come to a timely resolution. Senate Jurisprudence Comm., S.B. 368, 76th Leg. R.S. (1999). The circumstances under which the statute was enacted require Texas to enact "laws providing for expedited processes to establish and enforce child support obligations" as a condition of receiving federal funds. *In re G.S.G.*, 145 S.W.3d at 353 (citing House Comm. on Juvenile Justice & Fam. Issues, Bill Analysis, Tex. H.B. 823, 78th Leg., R.S. (2003)).

Further analysis on the bill shows:

**Recommendations of child support masters.** Child support masters, who are attorneys appointed by the presiding judge of a judicial region to hear enforcement cases, could render and sign any order, such as a discovery order or other procedural order, that was not a final order on the merits of the case. Orders by child support masters after a trial on the merits of the case, other than recommendations of enforcement by contempt and recommendations of immediate incarceration, would become orders of the court without ratification of the referring court if an appeal had

not been filed or if an appeal had been waived.

House Comm. on Juvenile Justice & Fam. Issues, Bill Analysis, S.B. 368, 76th Leg. R.S. (1999). The consequences of allowing a master's order to become a final order of the court are that child support obligations can be imposed in a timely manner and enforcement can occur sooner. Both consequences further the purpose of enacting the statute.

In his response to the petition for writ of mandamus, the trial judge asserts this court's construction of the statutes concerning the powers and duties of masters has led to "innumerable arrests of *both the mother and father* on Capias and Attachments on defective notice, defective citations, and defective orders; incarceration for many days [has] resulted for the custodial parents (a witness) who was arrested and detained while the children were left unattended." (emphasis in original) Section 201.1041, however, permits a master's order to become final only if the order does not concern enforcement by contempt or immediate incarceration. TEX. FAM.CODE ANN. § 201.1041(a) (Vernon Supp.2004). Any order concerning contempt or incarceration cannot become a final order unless ratified by the trial judge. *Id.* The trial judge must review such orders and can refuse to adopt them. *Id.*

### CONCLUSION

At the time the master signed the proposed order, the order did not have to contain language of recommendation because of the provisionary status of the order according to the statute. The order became the final order of the court after the time to appeal passed without any party appealing the master's order. The trial court abused its discretion in declaring the order void. The writ of mandamus

is conditionally granted. We are confident the trial court will vacate the reinstatement order. If the trial court fails to do so, the writ will issue.